**FILED**

MAR 0 9 2020

Clerk, U.S. District Court
District Of Montana
Missoula

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| SWANK ENTERPRISES, INC., | CV 19–200–M–DLC |
| Plaintiff, | |
| vs. | ORDER |
| NGM INSURANCE COMPANY, | |
| Defendant. | |

Before the Court is Defendant NGM Insurance Company's Motion to

Transfer Venue. (Doc. 5.) NGM argues that, pursuant to a binding forum

selection clause, the proper venue for this action is the United States District Court

for the Northern District of Texas, Dallas Division. The Court denies the motion.

BACKGROUND

On November 12, 2019, Plaintiff Swank Enterprises, Inc. ("Swank") sued

Defendant NGM Insurance Company ("NGM") in Flathead County District Court.

(Doc. 1-1.) NGM promptly removed the action to this Court on the basis of

diversity (Doc. 1) before moving for transfer to the Northern District of Texas

(Doc. 5).

Swank, the general contractor for the Women's and Children's Center at the

Kalispell Regional Hospital, contracted with TerraCORE Panels, LLC for the

provision of stone panels to be used in the project. (Doc. 6-2.) The contract

1

between Swank and TerraCORE includes a forum-selection clause, reading: "Venue for any cause of action arising under this Agreement shall lie exclusively with the courts of Dallas County, Texas or the United States District Courts for the Northern District of Texas, Dallas Division." (Doc. 6-2 at 9.)

Swank alleges that it was damaged when it received defective panels from TerraCORE. In this action, Swank seeks recovery from NGM under a performance bond. The bond names NGM as surety, TerraCORE as principal, and Swank Enterprises as obligee/beneficiary. The bond does not have a stand-alone forum-selection clause, but it incorporates the underlying contract between Swank and TerraCORE by reference, "as fully and to the same extent as if copied at length herein." (Doc. 6-1.)

## LEGAL STANDARD

The exclusive remedy for enforcement of a forum-selection clause in federal court, 28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." *See Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 52 (2013). Generally, courts weigh private and public interests to determine whether transfer would serve the parties and "the interest of justice." *Id.* at 62. However, where there is a forum-selection

2

clause, the private interests necessarily weigh in favor of transfer, and courts

consider only whether the public interest in avoiding transfer is sufficiently strong

to overcome those private interests. *Id.* at 63–64.

Federal law governs "the interpretation of the forum selection clause." *Doe*

*1 v. AOL LLC*, 552 F.3d 1077 (9th Cir. 2009); *see generally Manetti-Farrow, Inc.*

*v. Gucci Am., Inc.*, 858 F.2d 509 (9th Cir. 1988) ("[T]he federal procedural issues

raised by forum selection clauses significantly outweigh the state interests . . . .").

However, because federal law requires consideration of, among other factors,

whether "enforcement would contravene a strong public policy of the forum in

which suit is brought," the analysis is not indifferent to Montana law. *Yei A. Sun v.*

*Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1088 (9th Cir. 2018) (quoting

*M/S Bremen v. Zapata Off-shore Co.*, 407 U.S. 1, 15 (1972)).

## DISCUSSION

The parties dispute: (1) whether a forum-selection clause is in place in the

first instance; and (2) if so, whether the Court should transfer venue to the

Northern District of Texas. Under general principles of surety law, the threshold

issue does not present a close call. As surety, NGM may avail itself of the

defenses available to TerraCORE, and so the forum-selection clause of the

underlying contract applies, even if it had not been incorporated in the performance

3

bond. As for the second, more difficult issue, Montana's strong public policy against forum-selection clauses requires the Court to deny the motion to transfer.

## I.     The forum-selection clause applies.

"A surety is one who, at the request of another for the purpose of securing to the other person a benefit, becomes responsible for the performance by the other person of some act in favor of a third person or pledges property as security for the performance." Mont. Code Ann. § 28-11-401. The beneficiary of a suretyship may sue the surety directly, without pursuing claims against the principal. Restatement (2d) of Contracts § 310. Because "[t]he liability of a surety is generally coextensive with that of the principal," 72 C.J.S. *Principal & Surety* § 80 (2020), "[a] surety ordinarily may avail herself . . . of any defense that her principal may have, except those defenses that the principal is precluded from urging or that have been waived by or are purely personal to the principal," 72 C.J.S. *Principal & Surety* § 200 (2020).

Thus, as many courts have recognized, general rules of suretyship authorize a surety to enforce a forum-selection provision found in the underlying contract to which the principal and beneficiary are parties. *See, e.g., Citi Structure Const. v. Zurich Am. Ins. Co.*, 2015 WL 4934414, at *3 (S.D.N.Y. Aug. 18, 2015) ("It should have been foreseeable to [the beneficiary] from the clear language of the forum selection clauses that [the surety] would seek enforcement of these clauses

4

. . . ."); *United States ex rel. Purcell P & C, LLC v. TolTest Inc.*, 2012 WL 2871787, at *11 (W.D. Wash. July 12, 2012) ("[U]nder the general principles of suretyship law, [the surety] can step into the shoes of the principal and invoke the venue clause of the Subcontract."); *see generally* Greta A. McMorris & Lawrence Lerner, *To what Extent Is a Surety Bound by Arbitration & Forum Selection Provisions in Its Principal's Contract?*, 33-SPG Construction Law. 22, 27–31 (Spr. 2013) (collecting cases).

The parties disagree whether a bond includes a forum-selection clause when it incorporates by reference the entirety of the underlying contract without expressly restating the forum-selection clause. But that disagreement is beyond the point; there is no conflict between the bond and the underlying contract, and so the forum-selection clause of the underlying contract applies to the beneficiary's suit against the surety. This is not to say that NGM is necessarily entitled to transfer, though. Rather, the dispositive question is whether the forum-selection clause is enforceable.

## II.    The forum-selection clause is not enforceable.

Under 28 U.S.C. § 1404(a), courts are authorized to transfer venue "[f]or the convenience of parties and witnesses" and "in the interest of justice." Courts considering whether transfer is appropriate "evaluate both the convenience of the parties and various public-interest considerations," weighing factors designed to

5

measure the private and public interests in play. *Atl. Marine*, 571 U.S. at 62.

However, where there is a forum-selection clause, the "calculus changes"—courts

must ignore the plaintiff's choice of forum and the convenience of the parties, and

the original venue's choice-of-law rules do not follow the case if it is transferred.

*Atlantic Marine*, 571 U.S. at 63–64.

In effect, "a district court may consider arguments about public-interest

factors only." *Id.* at 64. And these factors are unlikely to outweigh the forum-

selection clause: "a valid forum-selection clause should be given controlling

weight in all but the most exceptional cases." *Id.* at 63 (quoting *Stewart Org. v.

Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring)). This is so even

though the statute, by its clear terms, grants discretion to district courts, rather than

mandating transfer under particular circumstances, even if "all parties have

consented" to venue in another district. 28 U.S.C. § 1404(a) ("[A] district court

*may* transfer any civil action . . . ." (emphasis added)). Under the rule announced

in *Atlantic Marine*, it is an abuse of discretion to refuse to transfer venue where a

forum-selection clause applies absent a finding of "extraordinary circumstances."

571 U.S. at 62; *see, e.g. Gemini Techs., Inc. v. Smith & Wesson Corp.*, 931 F.3d

911, 914 (9th Cir. 2019) (reviewing for abuse of discretion).

The only question for the Court, then, is whether this case is "exceptional."

*Id.* As the Ninth Circuit has noted, "*Atlantic Marine* provides little guidance . . .

regarding what constitutes an 'exceptional reason' or 'extraordinary circumstances.'" *Sun*, 901 F.3d at 1088. For this reason, *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972), "continues to provide the law for determining the validity and enforceability of a forum-selection clause." *Gemini Techs.*, 931 F.3d at 914. "A forum-selection clause [is] controlling unless the plaintiff ma[kes] a strong showing that: (1) the clause is invalid due to 'fraud or overreaching,' (2) 'enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision,' or (3) 'trial in the contractual forum will be so gravely difficult and inconvenient that the litigant will for all practical purposes be deprived of his day in court.'" *Sun*, 901 F.3d at 1088 (quoting *Bremen*, 407 U.S. at 15, 18) (brackets removed).

Here, the dispute centers on the second *Bremen* consideration—the public policy of the forum state. By statute, Montana law appears to strongly disfavor—if not completely reject—forum-selection clauses: "[e]very stipulation or condition in a contract by which any party to the contract is restricted from enforcing the party's rights under the contract by the usual proceedings in the ordinary tribunals . . . is void." Mont. Code Ann. § 28-2-708. Nonetheless, less than two years ago, this Court, looking to the Montana Supreme Court's interpretation of § 28-2-708, determined that "[e]nforcement of the forum-selection clauses in [the agreements

at issue] would . . . not offend public policy." *Bjorgen v. Marco Techs., LLC*, 2018 WL 2023543, at \*4 (D. Mont. May 1, 2018).

Since this Court decided *Bjorgen*, the Ninth Circuit has issued further guidance regarding the second *Bremen* consideration. Examining an Idaho statute virtually indistinguishable from § 28-2-708, the Court held that the statute mandates invalidation of a forum-selection clause because it declares a "strong 'public policy of Idaho,'" which "suffices under *Bremen*'s public policy factor." *Gemini Techs.*, 931 F.3d at 916. That case, *Gemini Technologies*, 931 F.3d 911, and the 2018 case of *Sun*, 901 F.3d 1081, call into question this Court's reasoning in *Bjorgen*, particularly its implied determination that *Atlantic Marine*'s requirement of "extraordinary circumstances" alters the analysis that would have been applied under *Bremen*. *See Bjorgen*, 2018 WL 2023543, at \*4.

In *Bjorgen*, this Court also considered—but did not expressly rely upon—the Montana Supreme Court's interpretation of § 28-2-708, writing that "the public policy embodied in [the statute] is not so strong as to automatically invalidate a forum-selection clause as void under public policy." *Id.* (citing *Polzin v. Appleway Equip. Leasing, Inc.*, 191 P.3d 476, 482 (Mont. 2008)). This statement was not inaccurate, but it is not dispositive of the issue now before the Court. In light of *Gemini Technologies*, the Court must now conduct a more searching inquiry into

8

when § 28-2-708 voids a forum-selection clause and whether it does so in the present case.

The Montana case cited in *Bjorgen* does not squarely resolve the question. In *Polzin*, the Court wrote that "forum selection clauses are not presumptively void as against public policy." 191 P.3d at 482. But the Court did not cite § 28-2-708; rather it relied on its earlier decision in *Milanovich v. Schnibben*, 160 P.3d 562 (Mont. 2007), which is similarly free of any mention of the statute. Indeed, *Milanovich* relies on *federal* law for the proposition that "forum-selection clauses 'are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be "unreasonable" under the circumstances.'" 160 P.3d at 564 (*citing M/S Bremen*, 407 U.S. at 10).

Further, *Milanovich*'s framing of the issue is immediately distinguishable; there, the Court asked only whether a party to a contract consented to personal jurisdiction in Montana by agreeing to venue in Lewis and Clark County. *Id.* at 336–38 ("We hold that Schnibben knowingly consented to personal jurisdiction in Montana by agreeing to the clear and unambiguous forum-selection clause . . . of the employment contract."). Similarly, *Polzin* involved discussions of consent to personal jurisdiction and whether the forum-selection was void because of a power

9

imbalance between the parties to the contract. 191 P.3d at 514–15.[1] Neither

*Polzin* nor *Milanovich* resolves whether "enforcement [of the forum-selection

clause] would contravene a strong public policy of [Montana]." *Gemini Techs.*,

931 F.3d at 916.

Looking to decisions preceding (and unmentioned in) *Milanovich*, the

Montana Supreme Court's interpretation § 28-2-708 reiterates what is clear enough

from the statute itself—that Montana public policy strongly disfavors forum-

selection clauses that would transfer venue outside of the state.[2] "[The statute] has

historically been applied for two distinct purposes: (1) to protect Montana residents

from having to litigate outside of Montana; and (2) to invalidate pre-dispute

arbitration agreements." *Keystone, Inc. v. Triad Sys. Corp.*, 971 P.2d 1240, 1243

(Mont. 1998). Relevant here, "[t]he first purpose reflects the fundamental public

policy of this state to protect the substantive rights of Montana residents to seek

redress in the courts of Montana." *Id.* at 1244 (quotation marks, brackets, and

citation omitted). "Accordingly, § 28-2-708 . . . has been applied to invalidate

forum selection clauses" as "improper restraint[s] upon [parties'] exercise of [their]

---

[1] The Court first determined that Washington law governs interpretation of the contract and that "Washington law recognizes forum selection clauses as valid," rendering "Montana venue . . . improper." *Polzin*, 191 P.3d at 514. Given this initial holding, it is unclear what weight should be afforded to the Court's ensuing discussion of Montana law regarding forum selection clauses.
[2] This reading is consistent with the Montana legislature's express authorization of venue-selection agreements, which applies only to intrastate transfers of venue. Mont. Code Ann. § 25-2-202.

rights to enforce . . . contract[s] by . . . 'usual proceeding[s]' in the 'ordinary

tribunals' of Montana." *Id.* (quotation marks and citation omitted).

Most tellingly, the Court voided a forum-selection clause in *Montana ex rel.*

*Polaris Indus., Inc. v. Dist. Court of Thirteenth Judicial Dist.*, 695 P.2d 471 (Mont.

1985), and it did not mince words. In that case, a forum-selection clause provided

that that disputes arising from the contract would not be maintained in "any court

except in Hennepin, County, Minnesota District Court, or in the United States

District Court in Minneapolis, Minnesota." 695 P.2d at 471. In one short

paragraph, the Court disposed of the litigant's arguments for transfer, writing:

> The complaint of the plaintiff in this case comes within the provisions
> of [§ 28-2-708]. The plaintiff seeks to enforce its right under its
> contract . . . by a 'usual proceeding' in the 'ordinary tribunals' of
> Montana. We hold that the forum-selection clause of the Agreement is
> void under the statute as an improper restraint upon the plaintiff's
> exercise of its rights.

*Id.* Nothing in *Polzin* and *Milanovich* overrules the clear holding of *Polaris*.

Under *Sun* and *Gemini Technologies*, this Court must address the operation

of § 28-2-708. The language of the statute, amplified by *Keystone* and *Polaris*,

unequivocally "states a strong public policy" against enforcement of a forum-

selection clause requiring Montana resident Swank to litigate in Texas. *Gemini*

*Techs.*, 931 F.3d at 916. This strong statement of public policy is dispositive—

"satisfaction of *Bremen*'s public policy factor . . . suffice[s] to render a forum-

selection clause unenforceable." *Id.* NGM is not entitled to enforcement of the

forum-selection clause.

Accordingly, IT IS ORDERED that Defendant NGM Insurance Company's

Motion to Transfer Venue (Doc. 5) is DENIED.

DATED this 9th day of March, 2020.

Dana L. Christensen, Chief Judge
United States District Court